## NATHANIEL BARNETT v. JOHN G. LOGUE'S ADMINISTRATORS.

The plea of the administrator, under oath, which denies that his testator executed the notes, is a good plea of *non est factum*, under the 86th section of the act to regulate proceedings in the district court. (Paschal's Dig., Art. 1443, Note 549.)

A plea which merely denies the execution of a note, under article 1443, does not put in execution the assignment or indorsement, under the 6th section of the act about negotiable paper. (Paschal's Dig., Art. 225, Note 287.)

Although the bearer or indorsee of a note has the legal title to it, he may maintain a suit in his own name; yet if he paid no consideration for it, or holds it in trust for the payees, the maker is entitled to make any defense which he could make if the payees were the plaintiffs. (Paschal's Dig., Art. 222, Note 285.)

Whether the declarations of one of the payees against the note are admissible evidence depends upon the good faith of the transfer.

The jury were instructed, that if the notes were the property of the original payees, and not of the indorsee, who was plaintiff, they must find for the defendant. This was error. The possession of the notes, as bearer or indorsee, with the consent of, or in trust for, the payees, although they were in fact their property, was sufficient to authorize a recovery, subject to all proper defenses against the payee. (Paschal's Dig., Art. 222, Note 285.)

APPEAL from Colorado. The case was tried before Hon. BENJAMIN SHROPSHIRE, one of the district judges.

Nathaniel Barnett sued G. T. Jamison and C. Windron, as administrators of John G. Logue, upon three notes, the first dated 23d March, 1860, payable four months after date to H. K. Lewis, for $1,031 25, which note was indorsed to the plaintiff; the other two were dated 13th April, 1860, payable to Allen & Record, or bearer, each for $9,000, due at twelve and eighteen months, which were indorsed to the plaintiff. These notes were all averred to have been presented to the administrators, duly authenticated, under the statute, and that the administrators allowed the first, but rejected the two $9,000 notes. There is no averment that the first was approved by the county judge. (Paschal's Dig., Arts. 1309–1311, Notes 483–485.)

The defendants plead *non est factum* as to the two $9,000 notes, strictly under the 86th section of the act to regulate proceedings in the district court. (Paschal's Dig., Art. 1443, Note 549.) They also plead, that the first note had been allowed by the administrator, (but not that it had been approved by the judge,) and therefore the court had no jurisdiction of it. There were also two special pleas, as follows:

"And for answer, this defendant says that, if the two notes of $9,000 each ever were executed by the said J. G. Logue, which is denied, the same were accommodation notes, and were executed without any consideration; that the said John G. Logue had sold to the said Allen & Record, Henry Canfield's head-right league of land, lying and situated in Sabine county, Texas, for the sum of $18,000, on or about the day of the date of the two said notes of $9,000 each, and was unable to make title for want of the field-notes of said league of land, and said notes were given to remain in custody of the said Allen & Record to hold until the said J. G. Logue could return to Columbus, Texas, and get the field-notes of said league of land to make the title agreed upon. That the plaintiff, well knowing these facts, obtained possession of said notes from the agent of Allen & Record, without any consideration being paid by him for said notes, with instructions to deliver the notes up to J. G. Logue, upon his making the title to said league of land. That afterwards, on the 26th day of April, 1860, the said J. G. Logue executed to the said Allen & Record a good and valid deed for said Henry Canfield's league of land, in conformity to said agreement, and tendered the same to Allen & Record, and demanded his two said notes to be returned to him, in conformity to their agreement; but the said Allen and Record, combining and confederating together, for the purpose and with the intention of defrauding the said J. G. Logue, refused to deliver up the said notes to be canceled as they

had agreed so to do, and receive the title to said league of land. This defendant, therefore, prays that the court decree that said notes be canceled and delivered to this defendant, and that this cause be dismissed at the cost of the plaintiff.

"And, for further answer, this defendant saith, that, if the notes sued on ever were executed by the said J. G. Logue, which is denied, the same have been paid off by the said John G. Logue in his lifetime, by the making and tendering the deed to the Henry Canfield league of land, as per agreement between Allen & Record and J. G. Logue, and of this he puts himself upon the country."

The plaintiff excepted to the plea of *non est factum* on untenable grounds, and to the first special plea because it was not sworn to; because it was not alleged that the notes were not transferred after maturity, or that the plaintiff had notice of the defense; and he averred that he was the innocent holder of the note. In an amended answer, the administrator repeated all his defenses, and added, that the plaintiff was only the bailee of Allen & Record, who were still the real owners of the notes, and he prayed that the title to the said Canfield league of land be made to Allen & Record, and that the notes be canceled. This plea was sworn to.

Windron and Jamison, having ceased to be administrators of Logue, these defenses were put in by Alexander Dunlavy, the administrator *de bonis non*, in whose name the defense was ordered to progress. No notice was taken of the exceptions by the court.

The execution of the notes was proved by the plaintiff, and the notes read to the jury; the consideration was a stock of goods bought by the maker of the payees. The indorsement for money paid was proved to have been made in May, 1860. This was by witnesses who saw the notes executed and saw them indorsed.

Some witnesses for the defense threw discredit upon the

signatures; but the attorney for the defense swore to being present when Record and Logue were trying to settle the notes, and that Record admitted that it had been agreed to receive the Canfield league of land in payment; but that the land had been attached by the creditors of the payees, and hence they had declined to take the land, and had transferred the notes.

The court virtually instructed the jury to find against the defendants as to the first note, which had been allowed by the administrator and not disapproved by the chief justice. As to the others, he charged that, if Logue executed them, the jury would find for the plaintiff, provided they believed that the plaintiff was the owner of the notes, by transfer for valuable consideration, before maturity; and that, if the jury believed that the notes were not the property of the plaintiff, but still remained the property of Allen & Record, they would find for the defendants. He further instructed the jury, that if the plaintiff purchased them without notice of the payment, or failure of consideration, they would find for the plaintiff. The jury rendered a verdict for the defendants. A motion for a new trial was overruled, and the plaintiff appealed from the judgment.

*J. T. Harcourt*, for appellant.—1. The court erred in overruling the plaintiff's exceptions to the defendant's answer.

It is believed that the plea of *non est factum*, as to the signature of Logue, was not well plead, and was not properly supported by affidavit.

The statute provides, "That when a suit shall be instituted by any assignee or assignees, of any of the aforesaid instruments, (meaning negotiable paper,) the assignment or assignments thereof shall be regarded as fully proved, until the defendant or defendants shall deny in his plea that the same are genuine, and, moreover, shall file, with the papers of the cause, an affidavit stating that he or they

have good cause to believe, and do verily believe, that one or more of such assignments were forged." (Paschal's Dig., Art. 224.)

The plea was also liable to the objection that it proposed to vary, by oral evidence, the legal effect of a contract in writing. (Rockmore v. Davenport, 14 Tex., 602.)

2. The second assignment of error calls in question the ruling of the court as to the admissibility of the parol testimony of F. Barnard. This evidence was clearly inadmissible under the law and the state of the pleadings. The evidence was improperly received, because it attempted to vary and contradict the written contract of the parties. (2 Phil. on Ev., 357, 358; Notes to Phil. on Ev., part 2, p. 593, note 295.)

The possession of the notes by the plaintiff at the time of the trial was sufficient evidence of his legal right to recover on them. (Greneaux v. Wheeler, 6 Tex., 523.)

If we should disregard the evidence of the two witnesses, Hyneman, who proved the indorsement to have been made in June, 1860, still, the notes being indorsed in blank, the law presumes the indorsement to have been made at the date of the execution of the notes. (Story on Prom. Notes, § 120.)

The indorsement itself imported absolute verity, unless denied by plea, supported by affidavit. (Austin v. Towns, 18 Tex., 31; Ellis' Administrator v. The Planters' Bank, 7 How. Miss., 235.)

"A fact, not having been averred, cannot be supplied by any presumption in favor of the verdict, since no evidence could legally have been admitted of a fact not averred, upon which the defendants' right to recover depended." (Ramsey v. McCanley, 2 Tex., 191.)

3. The court erred in charging the jury as to the law. We think it will clearly appear that the court below misconceived the law applicable to the case.

The fourth charge of the court was also erroneous, be-

cause the jury were told that the burden of proof was upon the plaintiff.

This was not true as to the proof of the indorsement by Allen & Record, and the ownership of the notes.

"The possession of a note, indorsed in blank, is, *prima facie*, evidence of title, and is conclusive in the hands of an innocent purchaser." (Greneaux v. Wheeler, 6 Tex., 523.) "The defendant did not put in issue the indorsement, so as to put the plaintiff upon proof of its execution." (Fulshear v. Randon, 18 Tex., 277; Paschal's Dig., Art. 224.)

"In the absence of proof to the contrary, the indorsement of a note, in presumption of law, is contemporaneous with the making of it, or, at all events, antecedent to its becoming due. If the defendant, therefore, would avail himself of the defense of want or failure of consideration, or payment to the original holder, it is incumbent on him to show the indorsement to have been made subsequent to the time when the note became due." (Watson v. Flanagan, 14 Tex., 354.)

The fifth charge of the court was manifestly erroneous.

The state of the pleadings did not authorize the court to submit such an issue to the jury.

In the case of Thompson v. Cartwright, 1 Tex., 87, the court say:

"The person who appears to be the legal holder of a promissory note may maintain an action upon it in his own name, although the actual ownership is in another." And, again: "The mere naked fact, of the plaintiff not being the real owner of the note, is not a matter of defense at law, either by plea in bar or in abatement."

In the same case the court, however, recognize the doctrine, "that a case might occur in which the maker of the note ought to be allowed to prove the actual ownership, for the purpose of letting in any defense between himself and the person having the beneficial interest."

"The rule, that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument, obtains as well in courts of chancery as in courts of law." (Hunt v. White, 24 Tex., 648.)

*W. J. Darden*, for appellee.—1. The first assignment of error is, that the court erred in overruling the plaintiff's exception to defendant's answer. The ruling of the court is sustained by the decision of this court in the case of Tarpley v. Poage's Administrator, (2 Tex., 147.) The affidavit of the administrator was sufficient to cast suspicion on the genuineness of the notes of $9,000 each; as to the other note, that being *res adjudicata*, or in process of adjudication, the district court properly took it from the consideration of the jury.

2. As to the second assignment of error, it is submitted that there was no error in permitting F. Barnard to testify.

Now, the charge of the court was in accordance with the issues made, (Fort v. Barnett, 23 Tex., 464.) Fraud vitiates every transaction, and the possession of the notes by record, after the alleged transfer, is *prima facie* evidence of fraud, not explained by plaintiff in error. (Twine's Case.)

That the court erred in refusing a new trial. This assignment of error is founded on the fact that, in the motion for new trial, the affidavits of some of the jurors were filed as part thereof, said affidavits seeking to impeach the integrity of their verdict. The whole matter in dispute, and the various issues thereon, were submitted to the jury, and they found for the defendants. To permit jurors to be tampered with, and induced to impeach the integrity of their own verdicts, would be as destructive to the value of the trial by jury as if they could be approached on the subject of their deliberations before verdict rendered. Hence this court has uniformly discouraged such practice. (21 Tex., 613; 17 Tex., 341; 1 Tex., 726 and 475.) In

the two latter cases, the language of the court is justly severe upon conduct so reprehensible.

MOORE, C. J.—The appellee did not intend by his plea of *non est factum* to question or deny the fact that the two notes for $9,000 each were indorsed by the payees, Allen & Record. The obvious purpose and effect of this plea is simply to put in issue the execution of the notes by John G. Logue, appellees' intestate. Being properly verified by affidavit, it was amply sufficient for this purpose. (Tarpley v. Poage, 2 Tex., 146; Parr v. Johnson, 15 Tex., 297.)

Although appellant, both as bearer and indorser, has the legal title to said notes, and the suit upon them may, without doubt, therefore, be prosecuted in his name, if it be true, as is alleged in the answer, that he paid no consideration for them, and holds them as the property and in trust for the payees, Allen & Record, unquestionably appellee is entitled to make any defense to them which he could have sustained if the suit had been brought by Allen & Record in their own names. The exceptions, therefore, of appellant to the answer, alleging the trust and the tender of performance on the part of Logue of the contract, as security for which the notes were given, should have been annulled, and the action of the court in this particular furnishes no grounds for a reversal of the judgment. Whatever may be said of the policy or correctness of the rule, if it were an open question, it cannot now be doubted that in our courts a deed absolute upon its face may be shown by parol testimony to have been intented as a trust. (Mead v. Randolph, 8 Tex., 196; McClenney v. Floyd, 10 Tex., 159; Grooms v. Rust, 27 Tex., 231.) Such evidence, as has been repeatedly held, does not vary or contradict the deed or written contract, but establishes an additional stipulation or agreement consistent with and superadded to that contained in the written instrument.

No reason has been presented us in support of the objec-

xxix—19.

jection to the ruling of the court permitting one of appellee's attorneys to be examined as a witness. Whether the notes to which he referred are the same upon which this suit is brought was of course a question for the jury; and whether any weight should be attached to the declarations and admissions of Record, one of the payees of the notes, depends upon the fact whether appellee has succeeded in making a case authorizing his equities against the payees of the notes to be let in as a defense to the suit by appellant.

The jury were instructed by the court, that if they believed these notes were the property of the payees, Allen & Record, and not that of appellant, they should find a verdict for appellee. To this charge we think the assignment of error is well taken. By it the decision of the case is made to depend, if taken as an isolated fact, upon an altogether immaterial question. The possession of the notes, either as bearer or indorser, by appellant, with the consent or in trust for Allen & Record, although they were in fact their property, was amply sufficient to authorize his recovery of the amount due upon them if there was no valid defense against the real owners. Unless appellee has such defense, there is not the slightest pretext shown in the record for his making the question in respect to appellant's title to the notes, or the object and purpose for which they were passed to him by the payees. (Greneaux v. Wheeler, 6 Tex., 524; Story on Agen., § 227, note 1.)

If the charge of the court was merely defective in omitting to instruct the jury in respect to an important issue in the case, appellant, unless he had asked the proper instruction, would have no cause to complain. But the charge given by the court to the jury in this case is not merely defective by reason of such omission; it is positively erroneous, and misled the jury, by directing them to return a verdict as they might determine an issue, which, standing alone, is altogether immaterial, and in no way affects the merits of the case. The judgment is reversed, and the cause

REMANDED.